# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

J.A. and M.A. o/b/o G.A.,

        Plaintiffs,

v.

Royal Oak School District,

        Defendant.

_____/

Case No. 4:23-cv-13106-FKB-CI

Hon. F. Kay Behm
Magistrate Curtis Ivy, Jr.

Ashley B. Jacobson (P83481)
**Jacobson Law & Advocacy, PLLC**
455 E. Eisenhower Pkwy Ste. 300
Ann Arbor, MI 48108
(248) 878-6940
Ashley@JLAPLLC.com
*Attorney for Plaintiffs*

Michele R. Eaddy (P41871)
Erin H. Walz (P55484)
**Thrun Law Firm, P.C.**
*Attorneys for Defendant*
2900 West Road, Suite 400
P.O. Box 2575
East Lansing, MI 48826-2575
(517) 484-8000
meaddy@thrunlaw.com
ewalz@thrunlaw.com

_____/

## DEFENDANT'S IDEA APPEAL BRIEF

# TABLE OF CONTENTS

I.      Introduction .................................................................................................. 5

II.     Key Facts ..................................................................................................... 5

III.    Procedural Background ............................................................................... 6

IV.     Issues on Appeal ......................................................................................... 7

V.      Standard of Review ..................................................................................... 8

VI.     Legal Argument ........................................................................................... 9

        A.      The District offered Student the appropriate supports to participate in
                extracurricular and non-academic activities ........................................... 11

        B.      Student's IEP never called for the provision of extracurricular and non-
                academic activities, thus there was FAPE implication. ......................... 11

        C.      The District offered Student a FAPE including appropriate classroom
                assignments and sensory options during the last two hours of the
                school day. .............................................................................................. 14

        D.      The District did not deny Student a FAPE when it removed him from a
                classroom that was not appropriate for him but included community-
                based learning activities. ........................................................................ 15

        E.      The District's BIP for Student was appropriate and sufficiently
                informed as to his disabilities to address Student's behavior ............... 18

        F.      District personnel who administered assessments and other evaluation
                materials were sufficiently trained in FASD. ......................................... 22

        G.      Student does not require a private placement funded by the District to
                receive a FAPE. ..................................................................................... 24

        H.      The District has no obligation under the IDEA to pay for a third-party
                educational consultant to evaluate placements for Student. ................. 25

VII.    Conclusion ................................................................................................. 26

# INDEX OF AUTHORITIES

**Cases**

*Bd. of Ed. v Rowley*, 458 U.S. 176 (1982) ................................................................9, 10

*C. K. v Sylvania City Sch. Dist.*, 2022 U. S. App. LEXIS 25360 (6th Cir., 2022), ........ 9

*Deal v Hamilton Co. Bd. of Ed.*, 392 F.3d 840 (6th Cir., 2004) .................................. 10

*Diamond v. McKenzie*, 602 F. Supp. 632 (D.D.C., 1985) ............................................ 26

*Endrew F. v Douglas Co. Sch. Dist.*, 137 S. Ct. 988 (2017) ................................... 10, 11

*J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431 (9th Cir. 2010) ................................. 25

*Knable v Bexley City Sch. Dist.*, 238 F.3d 755 (6th Cir., 2001)................................... 10

*L. H. v Hamilton Cnty. Dep't of Educ.*, 900 F.3d 778 (6th Cir., 2018).......................... 9

*Somberg v Utica Cmty. Schs.*, 908 F.3d 162 (6th Cir., 2018) ........................................ 9

**Statutes**

20 U.S.C 1414(d)(3)(B)(i) ............................................................................................... 22

20 U.S.C. 1401 ................................................................................................................... 9

**Other Authorities**

*Letter to Richards* (OSEP 2010)..................................................................................... 25

*Questions and Answers: Addressing the Needs of Children with Disabilities and IDEA's*
*Discipline Provisions* (OSEP 22-02)......................................................................... 18

**Regulations**

34 C.F.R. §300.107 ......................................................................................................... 12

34 C.F.R. §300.324(a)(2)(i) ............................................................................................ 18

34 C.F.R. §300.516(c) ....................................................................................................... 8

34 C.F.R. §300.530(f)...................................................................................................... 18

71 Fed. Reg. 46,583 (2006) ............................................................................................ 11

## INDEX OF EXHIBITS

**Exhibit A**    *Questions and Answers: Addressing the Needs of Children with Disabilities and IDEA's Discipline Provisions* (OSEP 22-02)

**Exhibit B**    *Letter to Richards* (OSEP 2010)

## I.  Introduction

Defendant Royal Oak School District asks that this Court give deference to and uphold the September 7th, 2023 Decision and Order of the administrative agency in the underlying due process. The Decision held for the District on ten of Plaintiff Parents' eleven claims, and the District did not appeal that single issue. The Decision is well-reasoned and based on educational expertise; it should be affirmed.

## II.  Key Facts

Student G.A. ("Student") attended Royal Oak Middle School (ROMS) for the 2021-22 and 2022-23 school years. See ECF 24-1, PageID 2373, Jt Exh 102; *id.*, PageID 2412, Jt Exh 107; *id.*, PageID 2484, Jt Exh 111. ROMS is a traditional campus with almost 1,200 students in a large, complex building. ECF 24-1, PageID 2158, Tr 117, ll 10-13; ECF 24, PageID 1974, Tr 455, ll 9-16.

At Student's April 2022 IEP meeting, the IEP team discussed a center-based program for Student as his behaviors were significantly impacting his learning and the learning of others. See ECF 24-1, PageID 2412, Jt Exh 107. The team ultimately decided to attempt "additional strategies, supports, and programming ... prior to considering a more restrictive environment." *Id.* at PageID 2437. Student remained at ROMS for the 2022-23 school year, but the District-based members of his IEP team believed, and told Parents, that he may require center-based programming. *Id.*

At Student's April 2023 IEP meeting, the IEP team returned to the issue of placement and the District-based members of the team made a formal offer of FAPE that included Student's placement at the Edison School, a center-based program dedicated to providing support to students whose behavior interferes with their learning. ECF 24-2, PageID 2485, Jt Exh 111; ECF 24, PageID 1968, Tr 431, ll 10-17. Plaintiffs and their lawyer expressed their disagreement with Edison as the location for implementation of the IEP and wanted additional options, which the District did not provide as it had made its offer of FAPE. ECF 24-1, PageID 2095, Tr 233, l 10-Tr 234, l 14.

## III.    Procedural Background

This action originated as a due process complaint under the Individuals with Disabilities Education Act (IDEA) filed by Plaintiffs Parents J.A. and M.A. ("Parents") on behalf of their minor son, G.A. ("Student"), against Defendant Royal Oak Schools ("District") on October 18, 2022 ("Complaint"). Parents subsequently filed a second due process complaint on April 7, 2023. The complaints were consolidated for hearing (collectively, "Complaints").[1] The issues for hearing were set forth in two orders:

---

[1] The Michigan Office of Administrative Hearings and Rules prepared separate records for the two due process complaints, although they were consolidated. Thus two records were uploaded – ECF 23 and ECF 24. References herein are to ECF 24 (24-1, 24-2) record; page reference is to the "PageID" generated by the ECF system.

A hearing was held on the Complaints on June 7-9, and 12, 2023. The administrative law judge (ALJ) issued his Decision and Order on September 7, 2023 ("Decision"). ECF 24, PageID 1747.

## IV. Issues on Appeal

The issues on appeal are set forth below, including references to the federal Complaint (ECF 1) paragraphs.

A. Did the District deny Student a Free Appropriate Public Education (FAPE) by not appropriately providing for extracurricular and non-academic activities in Student's Individualized Education Program (IEP)? ECF 1, ¶¶ 100-105.

B. To the extent that Student's IEP called for the provision of extracurricular and non-academic activities, did the District deny a FAPE to Student by providing adequate modifications and supports for school personnel to allow Student to participate in extracurricular and non-academic activities? *Id.* at ¶¶ 100-105.

C. Did the District deny Student a FAPE by failing to provide classroom assignments that would confer a meaningful educational benefit during the last two hours of the school day and/or by failing to offer sufficient sensory options to student during the same time period? *Id.*, ¶¶ 106-110.

D. Did the District deny Student a FAPE by removing Student from community-based learning activities previously made available to Student? *Id.* at ¶ 111.

E. Is the District's Behavioral Intervention Plan (BIP) for Student insufficiently detailed and/or insufficiently informed from a Fetal Alcohol Spectrum Disorder (FASD) disorder perspective to address Student's behavior appropriately? *Id.* at ¶¶ 112-131.

F. Were the District's personnel who have administered assessments and other evaluation materials used to assess Student sufficiently trained in

FASD, or should the District's staff be required to undergo further training in FASD? *Id.* at ¶¶ 112-131.

\* \* \*

J. For Student to receive a FAPE, does Student's disability require a private placement funded by the District? *Id.* at ¶ 132.

K. Is the District obligated under the IDEA to pay for a third-party educational consultant to evaluate placement of Student? *Id.* at ¶ 133.

The Decision held in favor of the District on all of the above issues. There were an additional two issues (ECF 24-2, PageID 2573, 2574, Issue G; *id.*, PageID 2549, 2550, Issue H) not appealed by the Plaintiffs, and one issue not appealed by the District (*id.*, PageID 2550, Issue I). Only the issues above are before this Court.

## V. Standard of Review

The IDEA provides that when an "aggrieved party" appeals a final due process decision, the court:

1. Receives the records of the administrative proceedings.

2. Hears additional evidence at the request of a party.

3. Basing its decision on the preponderance of the evidence, grants the relief that the court determines appropriate.

34 C.F.R. §300.516(c).

In the Sixth Circuit Court of Appeals, federal district courts review the state administrative decision under a modified *de novo* standard, which requires the court to "make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative

8

proceedings. *C. K. v Sylvania City Sch. Dist.*, 2022 U. S. App. LEXIS 25360, *35 (6th Cir., 2022), citing to *Somberg v Utica Cmty. Schs.*, 908 F. 3d 162, 172 (6th Cir., 2018). This Court must defer to the findings of school officials "on matters of substantive educational methodology" when "the finding is based on educational expertise." *L. H. v Hamilton Cnty. Dep't of Educ.*, 900 F. 3d 778, 790 (6th Cir., 2018).

Each of Plaintiffs' issues required the ALJ to conduct an in-depth analysis of educational particulars, as is evident in the Decision. The ALJ's findings and conclusions should thus be given deference.

## VI.    Legal Argument

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1401, *et seq.*, entitles all children with disabilities to a FAPE. The U.S. Supreme Court emphasized that a free appropriate public education consists of educational instruction specifically designed to meet the unique needs of the child with a disability. *Bd. of Ed. v Rowley*, 458 U.S. 176, 188-89 (1982). In *Rowley*, the Court developed the two-prong test to determine whether the school district has provided a free appropriate public education:

> First, has the state complied with the procedures set forth in the Act?  And, second, is the individualized education program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefit. If these requirements are met, the state has complied with the obligations imposed by Congress and the courts can require no more.

9

458 U.S. at 206-07.

As to the first prong of the *Rowley* standard, there is no procedural claim in this appeal. *Rowley*, 458 U.S. at 206; see also *Knable v Bexley City Sch. Dist.,* 238 F. 3d 755, 765-76 (6th Cir., 2001) ("Substantive harm occurs when the procedural violations . . . seriously infringe upon the parent's opportunity to participate in the IEP process"). Parents made no procedural violation claim in this appeal.

As to *Rowley's* second prong, the Sixth Circuit Court of Appeals interpreted it to mean that an IEP must confer "meaningful educational benefit gauged in relation to the potential of the child at issue." *Deal v Hamilton Co. Bd. of Ed.*, 392 F. 3d 840, 862 (6th Cir., 2004).

In *Endrew F. v Douglas Co. Sch. Dist.*, 137 S. Ct. 988 (2017) the U.S. Supreme Court addressed Rowley's second prong, *i.e.*, the substantive requirements of the IDEA, and clarified that for a school district to meet its substantive obligation under the IDEA, it must offer an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* at 999. The fact that the progress contemplated must be appropriate in light of the child's circumstances reflects IDEA's focus on meeting the unique needs of the child with a disability:

"When a child is fully integrated in the regular classroom, as the Act prefers, what that typically means is providing a level of instruction reasonably calculated to permit advancement through the general curriculum ... If that is not a reasonable prospect for a child, his IEP need not aim for grade-level advancement. But his educational program must be *appropriately ambitious in light of his circumstances*, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom. The goals may differ, but every child should have the chance to meet challenging objectives."

*Endrew F.*, at 1000 (emphasis added).

**A. The District offered Student the appropriate supports to participate in extracurricular and non-academic activities.**

**B. Student's IEP never called for the provision of extracurricular and non-academic activities, thus there was FAPE implication.**

The IDEA does not require the provision of extracurricular activities to students with disabilities as a component of FAPE, but school districts are required to take the necessary steps to afford students an equal opportunity for participation in these activities. 71 Fed. Reg. 46,583 (2006).

The IDEA requires that each state ensure that:

1. Each public agency must take steps, including the provision of supplementary aids and services determined appropriate and necessary by the child's IEP team, to provide nonacademic and extracurricular services and activities in the manner necessary to afford children with disabilities an equal opportunity for participation in those services and activities.

2. Nonacademic and extracurricular services and activities may include counseling services, athletics, transportation, health services, recreational activities, special interest groups or clubs sponsored by the public agency,

> referrals to agencies that provide assistance to individuals with disabilities, and employment of students, including both employment by the public agency and assistance in making outside employment available.

34 C.F.R. §300.107. This is an "equal access" regulation, i.e., intended to ensure that students with disabilities have equal access to extracurricular activities. The District complied with the regulations at all times for Student.

Student's IEPs *never* called for extracurricular or non-academic activities as necessary for him to receive a FAPE. ECF 24-2, PageID 2373, Jt Exh 102; *id.*, PageID 2412, Jt Exh 107; *id.*, PageID 2485, Jt Exh 111. He periodically (not regularly) attended an after-school weight-lifting club. ECF 24-1, PageID 2138, Tr 37, ll 18-23; ECF 24, PageID 1990, Tr 517, ll 7-24. When he chose to attend, Teacher Bryan Stefan and ROMS Principal Kristin Meldrum ensured that a paraprofessional was available to attend with him. ECF 24, PageID 2033, Tr 362, l 16-Tr 363, l 1; *id.*, PageID 1990, Tr 517, ll 7-24. There was never a time that Student wanted to go to weight-lifting after school and the District did not have a paraprofessional to attend with him. ECF 24-1, PageID 2138, Tr 38, ll 7-14; ECF 24, PageID 2033, Tr 363, ll 9-24.

There was testimony that Student went to an after-school soccer club once or twice. ECF 24-1, PageID 2097, Tr 243, l 11-Tr 244, l 13. This club was started and run by two special education teachers at ROMS. *Id.*, Tr 244, ll 4-16. Those teachers

reported that Student came to soccer club and beat up another child and therefore he could not return to the club, with or without a paraprofessional, because the other children were fearful of him. *Id.* Plaintiff Mother falsely testified that Student really wanted to go to soccer club but he was prevented because there was no para support, a complete falsehood. ECF 24, PageID 2137, Tr 33, l 25-Tr 34, l 24; *id.*, PageID 2152, Tr 91, ll 10-Tr 92, l 4; ECF 24-1, PageID 2097, Tr 243, l 22-Tr 244, l 13.

The only other extracurricular mentioned by Parents at hearing was a ROMS dance. ECF 24-1, PageID 2325, Exh 3. On the morning of the dance, Plaintiff Mother contacted Student's teacher asking if the teacher would go buy Student a ticket (because he was not at school) and attend the dance with him. ECF 24-1, PageID 2151, Tr 87, l 19-Tr 91, l 6. The teacher was not available to do Parent's bidding and there was no provision in the IEP that required it. *Id.* This is not a denial of FAPE.

On the one hand, Parents claimed that Student required a shortened school day because he was more frequently dysregulated in the afternoons, and it was a trigger for him to be around groups of peers. See, e.g., ECF 24-1, PageID 2085, Tr 193, l 23-Tr 194, l 15; *id.*, PageID 2092, Tr 223, ll 12-23; *id.*, PageID 2099, Tr 248, ll 11-16; *id.*, PageID 2101, Tr 258, ll 3-24. On the other hand, Parents claimed that the

13

District failed to support the Student's attendance at afternoon, after-school activities with groups of peers. See ECF 24-1, PageID 2101, Tr 258-59; *id.*, PageID 2137, Tr 33-36; *id.*, PageID 2151, Tr 88-92.

Student's IEP teams never believed that he required extracurriculars to access his education. The Decision held that it was "undisputed that Student's IEPs did not specify that [he] must be allowed to participate in any specific extracurricular activity." ECF 24, PageID 1760. When he chose to attend something after school, the District made sure he had equal access to the activity. This was appropriate to ensure that Student had equal access, and that was the holding of the Decision. The Decision should be upheld on these issues.

**C. The District offered Student a FAPE including appropriate classroom assignments and sensory options during the last two hours of the school day.**

The District provided Student with a FAPE at all times relevant to these Complaints and Parents offered no evidence at hearing to the contrary. Specifically, Parents offered nothing to support this very specific allegation as to "classroom assignments" in the "last two hours of the school day" or "sufficient sensory options."

The Decision held that as to the substance of Student's class assignments, "Petitioners' evidence [] falls short" and there "was almost no evidence admitted at

the hearing" as to sensory issues. ECF 24, PageID 1761, 1762. The Decision went on to hold that while the District has an obligation to make a FAPE "available" to a Student, it is not the District's obligation to guarantee that a student absolutely *receives* a FAPE. *Id.* at 1762. The Decision should be affirmed as to this issue as it is supported by the hearing (lack of) evidence and the law.

**D. The District did not deny Student a FAPE when it removed him from a classroom that was not appropriate for him but included community-based learning activities.**

In October 2021, Student's IEP team determined that he would take social studies for one hour each day in a "Level 3" classroom. See ECF 24-2, PageID 2373, Jt Exh 102. "Level 3" is the classroom for a self-contained, cognitive learning program for students with cognitive impairments. ECF 24-1, PageID 2099, Tr 250, ll 8-11; ECF 24, PageID 2041, Tr 393, l 16-Tr 395, l 1. Student's placement was not changed to the Level 3 program; he attended the social studies class in that classroom for one hour per day. *Id.*, PageID 2042, Tr 396, l 17-Tr 397, l 16.

In 2021-22, the Level 3 Program was taught by Hannah Connelly, a special education teacher. ECF 24, PageID 2041, Tr 393, ll 16-21. Ms. Connelly regularly took her Level 3 Program students on two different types of outings: community-based learning activities (CBI), where the Level 3 students walk to the public library or credit union where they have a classroom bank account (ECF 24-1, PageID 2102,

Tr 261, l 23-Tr 262, l 9; ECF 24, PageID 2041, Tr 395, l 2-Tr 396, l 16); or class field trips chosen by Ms. Connelly to supplement their curriculum (ECF 24-1, PageID 2102, Tr 262, ll 12-16; ECF 24, PageID 2042, Tr 398, l 20-Tr 399, l 8). These outings frequently occurred in the afternoons, which is also when Student came to the Level 3 classroom for social studies. ECF 24, PageID 2042, Tr 396, l 17-Tr 397, l 16. If Student came to social studies (which he did only sporadically) and the Level 3 Program students were going on an outing, Ms. Connelly allowed Student to join them. ECF 24, PageID 2042, Tr 399, ll 9-23.

Student rarely attended his social studies class in Ms. Connelly's classroom, and eventually he came only when he knew there was a field trip. He stopped attending the CBI altogether because those were walking trips and he did not like to walk that much (ECF 24-1, PageID 2102, Tr 262, l 23-Tr 263, l 8) but he wanted to go on the Level 3 field trips. Two things became apparent on the Level 3 outings: Student's independent living skills were far more developed than that of the Level 3 students (ECF 24, PageID 2047, Tr 418, ll 4-8) and Student's behaviors prevented him from safely participating in the Level 3 outings (ECF 24-1, PageID 2102, Tr 263, ll 17-19; ECF 24, PageID 2043, Tr 402, l 20-Tr 404, l 21).

Because the Level 3 Program field trips were not appropriate or safe for Student and resulted in him missing an entire school day, his IEP team changed the location of his social studies. See ECF 24-2, PageID 2412, Jt Exh 107.

Somehow Parents have fashioned access to the Level 3 Program field trips into an entitlement, but they presented no evidence at hearing to support that Level 3 CBI or field trips were ever appropriate or required for Student to receive a FAPE. CBI were offered to Student by the teacher in whose classroom he attended social studies. That offer was eventually stopped because it was not appropriate or useful for Student, and he jeopardized his safety and that of other students during CBI. ECF 24-1, PageID 2148, Tr 76-78; *id.*, PageID 2150, Tr 83-85; *id.*, PageID 2102, Tr 261-65.

The Decision held:

> Petitioners have failed to establish that Respondent's decision to take Student out of Ms. Connelly's classroom—which was not suited to his needs—amounted to a denial of FAPE. Because of Student's significant behavior problems, accessing the curriculum at ROMS was a constant challenge for him. Under the circumstances, having Student spend five to six hours per week out of place in an otherwise self-contained program for cognitively impaired students, beneath his adaptive skill level, would not have been a decision reasonably calculated to enable Student to receive an educational benefit.

ECF 24, PageID 1763. This holding should be affirmed.

### E. The District's BIP for Student was appropriate and sufficiently informed as to his disabilities to address Student's behavior.

Parents offered no proofs at hearing to support their claim that the Student's BIP was inappropriate or insufficient. There is no requirement that a behavior intervention plan (BIP) be informed by a child's underlying medical diagnoses; it is intended to address the actual behaviors of concern at school that are interfering with his or others' ability to learn.

FBAs and BIPs are conducted and created by school personnel and are not medical in nature. See 34 C.F.R. §300.530(f) (the IEP team must conduct an FBA and develop a BIP). BIPs by their very nature address specific and observable behaviors, as do FBAs. See ECF 24-2, PageID 2399, Jt Exh 105. Student had BIPs throughout his time at ROMS that were reviewed and updated regularly in the District's ongoing efforts to provide Student with a FAPE. *Id.*, PageID 2399, Jt Exh 105; *id.*, PageID 2470, Jt Exh109; *id.*, PageID 2475, Jt Exh 110.

A BIP is not defined in the IDEA or its implementing regulations. The IDEA requires simply that IEP teams consider the use of positive behavioral interventions and supports, and other strategies, for a child with a disability whose behavior impedes their learning or that of others. 20 U.S.C 1414(d)(3)(B)(i); 34 C.F.R. §300.324(a)(2)(i). In the Office of Special Education and Rehabilitative Services *Questions and Answers: Addressing the Needs of Children with Disabilities and IDEA's*

*Discipline Provisions*, OSEP 22-02, a BIP is defined as "a component of a child's educational program designed to address behaviors that interfere with the child's learning or that of others and behaviors that are inconsistent with school expectations." Exhibit A to Defendant's IDEA Appeal Brief, OSEP 22-02, p 25. Throughout the relevant period, the District was implementing an appropriate behavior plan to address Student's behaviors.

Additionally, there are no standard behaviors associated with a diagnosis of FASD. See ECF 24, PageID 2028, Tr 343, l 15-Tr 344, l 12. Dr. Danielle Shapiro, a preeminent Michigan neuropsychologist with extensive experience with FASD children, testified that there is no way to differentiate between what causes a student with multiple diagnoses (such as Student) to engage in a specific behavior. ECF 24, PageID 2024, Tr 326, l 24-Tr 330, l 2; *id.*, PageID 2029, Tr 344, l 21-Tr 345, l 6. Dr. Shapiro further testified that a person working with FASD students must address the symptoms – the behaviors themselves; not whatever may be the underlying diagnosis causing the behaviors. *Id.*, PageID 2029, Tr 344, ll 13-20. The ALJ found Dr. Shapiro to be credible and noted her testimony that it is "impossible to attribute one of Student's behaviors to any of his specific diagnoses or risk factors." ECF 24, PageID 1763.

Dan Dubovsky, an FASD training expert who testified for Parents, identified no standard behaviors for FASD children. See ECF 24, PageID 2015, Tr 288-303. He identified some behavioral approaches that he prefers, such as immediate consequences because the concept of time is distorted for FASD individuals. ECF 24, PageID 2018, Tr 301, l 23-Tr 302, l 13. Mr. Dubovsky also testified that there is no organization that specializes in FASD training in the country, however in Michigan the Department of Health and Human Services sometimes offers trainings on FASD. ECF 24, PageID 2019, Tr 304, l 20-Tr 306, l 2. In light of the Parents' own expert's testimony, District staff are as well-trained in FASD as is possible. ECF 24, PageID 2019, Tr 304, l 20-Tr 306, l 2; ECF 24-2, PageID 2225,Exh G.

Parents requested and obtained a publicly funded independent educational evaluation (IEE) FBA by a provider of their choice. See ECF 24-2, PageID 2523, Jt Exh 114. The District used the IEE FBA to inform Student's BIP, adopting some of the language and findings of the IEE provider verbatim. ECF 24, PageID 1981, Tr 483, l10- Tr 484, l 1; ECF 24-2, PageID 2475, Jt Exh 110. Parents then decided the IEE FBA was not sufficiently "FASD informed," so they sent the BIP to other people for their input. See ECF 24-1, PageID 2153, Tr 95, l 6 -Tr 96, l4; ECF 24, PageID 1982, Tr 484, ll 2-22. For example, one of those outside "experts" was a special

education teacher at another school who was the parent of an FASD child, who offered her comments on the BIP. *Id.*

In support of this allegation, Plaintiff Mother testified that she believed District personnel did not properly implement Student's BIP because "there was no appropriate FASD-informed training" and "the empathetic tone wasn't always used or a long enough pause for him to understand what was being said to him." ECF 24-1, PageID 2143,Tr 57, ll 8-19.

A BIP addresses behaviors, not diagnoses. School personnel work with and address student behaviors – whether caused by FASD, ADHD, ASD, or any of the myriad medical diagnoses of special education students. Student's 2022 BIP was based on Parents' IEE FBA and was revised and amended regularly as the District personnel worked with Student. ECF 24-2, PageID 2475, Jt Exh 110; *id.* at PageID 2523, Jt Exh 114.

Parents offered no credible testimony or evidence that Student's BIP was not appropriate for him or implemented with fidelity. The Decision held that the District's BIP was appropriately focused on behavior and that there was no evidence to support Plaintiffs' claim. This finding should be affirmed.

**F. District personnel who administered assessments and other evaluation materials were sufficiently trained in FASD.**

Parents offered no evidence of assessments administered by staff who were insufficiently trained in FASD. To prevail, Parents had to identify which staff person administered which assessment, and why a lack of training caused a problem. None of this was offered at hearing.

Parents' October 18, 2022 Due Process Complaint states this issue as:

> Are all assessments and other evaluation materials used to assess G.A. administered by trained and knowledgeable personnel, including those trained in FASD? If not should the staff undergo further training? 20 U.S.C. §1414(b)(3)(A)(iv).

ECF 24-2, PageID 2616. In the Order Following Prehearing Conference, the ALJ articulated the issue as:

> **E.** Were Respondent's personnel who have administered assessments and other evaluation materials used to assess Student sufficiently trained in FASD, or should Respondent's staff be required to undergo further training in FASD?

ECF 24-2, PageID 2574. In their federal complaint to appeal this issue, Parents have significantly altered it to:

> "The District denied Student a FAPE by failing to properly train staff on Student's disability and failing to offer programming in an FASD-informed manner."

ECF 1, Complaint, p 29 ¶112.

The District addresses the original issue in this appeal brief, not the latest

incarnation which was not raised or addressed at hearing.

The testimony and evidence as to District staff training included:

- Amy Thornton, Student's 2021-22 EI teacher, attended several FASD-specific trainings, including an Oakland County training recommended by Parents. ECF 24-1, PageID 2097, Tr 242, ll 6-12; *id.* at PageID 2225, Exh G.

- Bryan Stefan, Student's 2022-23 teacher, attended at least three FASD trainings, including one that was six hours long. ECF 24, PageID 2037, Tr 377, l 23-Tr 379, l 16; ECF 24-1, PageID 2225, Exh G.

- Melanie Davis, Student's ROMS social worker for 2022-23, attended training and studied FASD to educate herself further. ECF 24, PageID 1979, Tr 472, l 20-Tr 473, l 13; ECF 24-1, PageID 2225, Exh G.

- Erin Shaughnessy, Student's 2021-22 social worker attended an FASD training. ECF 24-1, PageID 2161, Tr 127, l 13-Tr 128, l 11; *Id.* at PageID 2225, Exh G.

- Amanda Glappa, Student's 2021-22 EI teacher and 2022-23 teacher consultant, attended at least four FASD trainings, including the six-hour training she attended with Mr. Stefan. ECF 24, PageID 1986, Tr 504, ll 15-17; ECF 24-1, PageID 2225, Exh G. Another FASD training did not occur because Parents failed to follow through on the arrangements. ECF 24, PageID 1986,Tr 503, l 15-Tr 504, l 1.

- Kristin Meldrum, ROMS Principal for 2022-23, attended a training and created the list of all Royal Oak staff training at Exhibit G. ECF 24, PageID 1990, Tr 518, l 24-Tr 519, l 12; ECF 24-1, PageID 2225, Exh G.

All of this leaves open the question: what assessment or evaluation were

Parents referring to in this allegation? Plaintiff Mother testified that every single

classroom assignment is an assessment if Student believes it is. See ECF 24-1,

PageID 2150, Tr 82, ll 20-22. No further testimony or evidence was offered by Parents. They failed to establish even the basic premise of this allegation by a preponderance of the evidence.

The Decision held that Parents' failed to meet their burden of proof on this claim. This holding should be upheld as appropriate in light of the complete lack of evidence to support Parents' claim.

### G. Student does not require a private placement funded by the District to receive a FAPE.

Parents offered no testimony or evidence as to a private placement that they believe is appropriate for Student other than "not the Edison School" and Plaintiff Mother's vague testimony that it be "highly informed FASD – FASD-informed program that's small, strength-based, non-punitive and that uses the neurobehavioral model and is accommodating." ECF 24-1, PageID 2144, Tr 59, ll 11-19.

The District established at hearing that Student requires a small, highly structured and behavior-intensive program to receive a FAPE, which its offered placement at the Edison School provided. Parents seemed to believe that the District was required to offer them multiple placement options for them to choose from like a menu, which is false.

The District was ultimately responsible for ensuring that Student was offered an appropriate program, and as the IEP team, which includes the Parents, could not

reach a consensus, it was for the District to determine appropriate services and provide Parents with prior written notice of the offer and of their right to seek resolution of any disagreements by initiating an impartial due process hearing. Exhibit B to Defendant's IDEA Appeal Brief, *Letter to Richards* (OSEP 2010). An IEP team should avoid offering an inappropriate placement simply to honor the parents' wish for the child to be educated in a particular setting. *See, e.g., J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431 (9th Cir. 2010) (noting that while the district had an obligation to consider the parents' input, it also had to ensure that it offered the student FAPE).

It was the District's obligation to make its offer of FAPE; if Parents were not in agreement, that is the purpose of Procedural Safeguards (which they exercised by filing for due process and now this appeal). At no time did the District believe Student required a private placement nor did Parents' offer any evidence that he did. The Decision's holding on this issue should be affirmed.

**H. The District has no obligation under the IDEA to pay for a third-party educational consultant to evaluate placements for Student.**

The only "third-party educational consultant" involved in deciding where Student should attend school was, initially, the Administrative Law Judge, who heard the evidence and testimony at hearing. In due process hearings regarding placement disputes, the decision-maker has considerable authority to determine

what placement would be appropriate for the student. *Diamond v. McKenzie*, 602 F. Supp. 632, 638-39 (D.D.C., 1985).

Because Parents did not offer the ALJ a private placement to consider, he found "it is not possible to determine whether a private placement would be appropriate for Student based on the existing record." ECF 24, PageID 1766. This remains true – without a proposed private placement for the ALJ to consider, he could not rule in favor of Parents on this issue. That holding must be upheld.

## VII.  Conclusion

Parents failed to satisfy their burden of proof on any of the issues appealed and the Decision should thus be upheld.  The Decision was well-reasoned, considered all of the testimony and evidence, and is thus entitled to deference. It should be affirmed by this Court on all of the issues.

<div style="margin-left:40%">

Respectfully submitted,

THRUN LAW FIRM, P.C.
Attorneys for Defendant

</div>

Dated:  October 7, 2024           /s/ Erin H. Walz
                                  Erin H. Walz (P55484)
                                  2900 West Road
                                  P.O. Box 2575
                                  East Lansing, Michigan 48826-2575
                                  ewalz@thrunlaw.com

*CERTIFICATE OF SERVICE*

STATE OF MICHIGAN )
                  )
                                          COUNTY OF INGHAM )

I hereby certify that on October 7, 2024, I electronically filed the foregoing paper

    with the Clerk of the Court using the ECF system which will send confirmation

of such filing to the following:

                   Ashley B. Jacobson - Ashley@JLAPLLC.com

                            Respectfully submitted,

Dated:  October 7, 2024              /s/ Erin H. Walz                        
                                     Erin H. Walz (P55484)
                                     Michele R. Eaddy (P41871)
                                     2900 West Road
                                     P.O. Box 2575
                                     East Lansing, Michigan 48826-2575
                                     meaddy@thrunlaw.com